ARTHUR LYMAN, apt. *vs.* HARMON W. MORSE, exr. of J. W. TURNER, et als.

January Term, 1897.

Present: Ross, C. J., TAFT, ROWELL, TYLER, MUNSON and START, JJ.

*Construction of Codicil.*

By his will the testator gave one-half of the income of his estate to his son Charles during his life and upon his death to the two sons of Charles, in equal shares, for ten years, when the principal was to become theirs; the other half of the income he gave to Arthur, a son of his deceased daughter, for ten years, when the principal was to become his unless he died before that time, in which case it was given to a charity. By a codicil he changed the foregoing will so as to give Charles two-thirds of the income and Arthur one-third. *Held*, that Arthur was entitled to one-third, only, of the principal.

APPEAL from the Probate Court for the District of Lamoille. Trial by court at the December Term, 1896, Lamoille County, *Rowell*, J., presiding. Judgment *pro forma* that the plaintiff take one-third, only, of the estate. The plaintiff excepted.

*P. K. Gleed* for the plaintiff.

*Hogan & Royce* and *Frank Plumley* for the defendant.

TYLER, J. It appears by the agreed statement of facts that the testator, J. W. Turner, had two children, Charles W. and Mrs. Lyman, and that when he made his will and codicil the son was living and the daughter had deceased.

Charles died October 16, 1887, leaving two sons, Henry W. and Roy W. They and Arthur Lyman, son of the testator's daughter, were all living November 26, 1896, and are still living.

The will was made September 30, 1878, and the codicil January 19, 1882. The testator died October 26, 1886. The second paragraph of the will is:

"I give, devise and bequeath all interest and income on all of my property, personal and real estate, not herein before disposed of, to Charles W. Turner and Arthur Lyman, son of Seymour Lyman, as follows: I give, devise and bequeath one-half of said interest and income to said Charles W. Turner during his natural life, and in case of his death I give, devise and bequeath said C. W.'s interest and income to Henry W. Turner and Roy W. Turner, said C. W. Turner's sons, each one-half, and to be paid them for ten years, then principal to become theirs. The other half of said interest and income from all my property not herein before disposed of, I give, devise and bequeath to Arthur Lyman, son of Seymour Lyman, and to be paid to the said Arthur for ten years, then the principal to become his. In case of his death before the expiration of ten years, then in that event, said Arthur leaving no heir or heirs, I give, bequeath and devise the said principal to the American Board for Foreign Missions."

The codicil is as follows:

"I hereby change the foregoing will so as to give the said C. W. Turner two-thirds of said interest and income and one-third to the said Arthur Lyman."

The testator's intention is clearly expressed in the original will to give one-half of the income of his estate to his son Charles for life and after Charles's death to his sons Henry and Roy for ten years, when one-half of the principal should become theirs.

The intention is equally clear and unequivocal that Arthur Lyman should have the other half of the income for ten

years after the testator's death, when one-half of the principal should be his if he were then living. He was to have as much of the income and principal as both his cousins.

The sons of Charles are not mentioned in the codicil, but no claim is made that they are not entitled to their father's share of the income upon his decease. This was so held in *Lyman* v. *Turner's Executor*, 62 Vt. 465.

The defendants contend that the gift in the codicil of two-thirds of the income to Charles carries with it a gift to him of two-thirds of the principal, while the plaintiff contends that the codicil does not affect the principal.

It is a settled rule that the intention of the testator must, if possible, be discovered, and when discovered, must govern, because, as was said by Chief Justice *Shaw* in *Quincy, Exr.,* v. *Rogers and others,* 9 Cush. 291, * * * "It is his intention, manifested in his words, which makes his last will and testament." The same learned judge gives some of the modes by which the meaning and intent of the testator may be ascertained; as where there is a codicil, the will and codicil are to be construed with reference to each other, to determine from change of circumstances or otherwise what it is intended to alter, and what to retain and confirm; and that the codicil shall change the will so far only as the intent is manifest, especially where in all other respects the will is in terms ratified and confirmed. The rule is concisely stated in *Barnes* v. *Hanks,* 55 Vt. 317: "A codicil is regarded as a part of the will, and the will and codicil are to be construed as one instrument, and a codicil should be so construed if it can fairly be done, so as to make it harmonize with the purposes declared in the body of the will." I Redf. on Wills, 288; *Thompson* v. *Churchill,* 60 Vt. 376. In I Jarman on Wills (6th ed.) 139, it is said that: "In determining the extent to which a codicil affects the disposition of a will, it is an established rule not to disturb the disposition of the will further than is absolutely necessary to give effect to the codicil."

Nothing is clearer in the whole instrument than that it was the testator's intention by the codicil to increase Charles's share of the income from one-half to two-thirds during Charles's life; but whether he supposed that changing the fractional parts of the income would change the disposition of the principal in the same ratio, or whether he supposed that the change would leave the principal unaffected, must be determined from the entire instrument. It is argued on one side that the testator's omission to mention the principal in the codicil is controlling evidence that he intended to leave it as provided in the original will, under the rule that a purpose in the codicil to alter the will in one particular carries with it the presumption that the testator did not intend to alter it in any other. On the other side it is argued that there is no disposition of the principal in the original will independent of the income, but that it follows the course of the income, and that the silence of the testator in respect to the principal has no significance.

Either one of two events, which the testator might reasonably have anticipated, would defeat the leading purpose of the codicil under the plaintiff's construction of it: If Arthur should die within ten years after the testator's decease his half of the principal would at once vest in the American Board, and only one-half of the estate would remain from which Charles could derive an income. If Arthur lived ten years after the testator's death he would then be entitled to one-half of the estate, and if Charles continued in life he could thereafter receive only the income of the remaining half. The testator, in the original will, did anticipate and provide for the possibility of Arthur's death within ten years after his own, and may be presumed to have considered that possibility when he made the codicil.

Again, if Charles and Arthur lived ten years after the testator's death and Charles then died, under the plaintiff's construction, Arthur would then take his half of the principal and defeat Charles's sons from having two-thirds

of the income, or the entire principal would be held in trust for ten years that the income might be divided according to the codicil and according to the decision in the 62d Vt. Under one construction the will and codicil would be in certain events, inconsistent with each other, and a trust, which the testator did not contemplate, would arise of necessity; while under the construction here adopted the two parts of the instrument would always harmonize.

Therefore, in view of the testator's clearly expressed desire to provide more amply for his son, we think the more reasonable construction of the codicil is that he supposed and intended that the principal would follow the income by the codicil as it would have done by the will. This view is strengthened by the fact that the possibility of Arthur's death within the ten years was contemplated by the testator, and yet he made no provision that the estate should be held until the end of the ten years for the payment of the income pursuant to the codicil. This construction is not in conflict but in consonance with the well-settled rule cited by the plaintiff's counsel, that where the devise in the will is clear, it is incumbent upon those who contend it is not to take effect by reason of a revocation in the codicil, to show that the intention to revoke is equally clear and free from doubt as the original intention to devise; that if there is a reasonable doubt whether the clause of revocation was intended to include the particular devise, then such devise ought to stand.

The entire will must be construed as if the fractional division provided by the codicil were read into the body of the will in place of the division there made, in which case there could be no reasonable doubt but that Charles Turner's sons would take two-thirds of the principal and Arthur Lyman one-third thereof.

*Judgment affirmed.*